[Cite as *State v. Blankenburg*, 2014-Ohio-4621.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


STATE OF OHIO,                          :

    Plaintiff-Appellee,                 :          CASE NO.   CA2013-11-197

                                :              O P I N I O N
    - vs -                                          10/20/2014

                                :

MARK E. BLANKENBURG,                    :

    Defendant-Appellant.                :


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2009-03-0368


Michael T. Gmoser, Butler County Prosecuting Attorney, Michael A. Oster, Jr., Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Repper, Pagan, Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for defendant-appellant


    **S. POWELL, J.**

    {¶ 1}   Defendant-appellant, Mark E. Blankenburg, appeals the decision of the Butler County Court of Common Pleas denying his petition for postconviction relief ("PCR").  For the reasons that follow, we affirm the judgment of the trial court.

    {¶ 2}   In October 2009, appellant, a pediatrician, was convicted of various sexual offenses involving his minor patients.  This court affirmed the convictions in March 2012.

*State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289 (12th Dist.) (*Blankenburg I*). While his direct appeal was pending, appellant filed a PCR petition in the trial court in November 2010, asserting that his Sixth Amendment right to a jury trial had been violated due to the bias of one of the jurors in his case, T.M. The state moved for summary judgment, arguing that the claim of juror bias was not tenable under the "aliunde rule" in Evid.R. 606(B). Appellant filed a memorandum in opposition to the state's motion, attaching affidavits from two of T.M.'s coworkers at Kroger where T.M. was employed as a pharmacist.

{¶ 3} One of the affidavits was from D.M., who was a pharmacy technician at Kroger. D.M. stated in his affidavit that T.M. had told him that her son was one of appellant's patients, and that while T.M. never said that her son had been abused by appellant, "she expressed a great interest in being a juror in the case. She was obsessed with it. She talked about it every day, and frequently stated that she was 'determined to be on that jury.' She also stated that she wanted to be the foreman of the jury so that she could deliver a guilty verdict to [appellant]." D.M. also stated in his affidavit that during the time he and T.M. worked at Kroger, appellant ordered prescriptions through their pharmacy. D.M. opined in his affidavit that T.M. "was biased towards [appellant] and sought to be on the jury so she could convict him."

{¶ 4} The other affidavit was from T.B., who was a pharmacist at the same Kroger where T.M. was employed. T.B. stated in his affidavit that during the time he worked with T.M., he and T.M. filled prescription requests regularly from appellant; that D.M. told him that T.M.'s child or children were patients of appellant; that T.M. told D.M. she was determined to get on the jury in appellant's criminal case and that "she wanted to see [appellant] 'fry' (her word) for what he had allegedly done to the various victims." T.B. also stated in his affidavit that T.M. "has a very persuading personality, that she is intelligent, attractive, confident, well spoken/out spoken and could really lead others to follow her[.]"

{¶ 5} Appellant asserted in his memorandum in opposition to the state's motion for summary judgment that the statements allegedly made by T.M. "wholly contradict[]" those she made in voir dire. In its reply brief, the state reiterated its argument that this information was barred by the aliunde rule, and added that the averments in the affidavit were inadmissible hearsay.

{¶ 6} In April 2012, the trial court granted the state's motion for summary judgment and issued an order denying appellant's PCR petition, without holding an evidentiary hearing. The trial court determined that appellant's claim was barred by the doctrine of res judicata, since he failed "to show that the evidence he presented is more than marginally significant and that it advances his claim beyond a mere hypotheses that the result would be different if this evidence had been submitted at trial."

{¶ 7} In December 2012, this court reversed the trial court's decision to dismiss appellant's PCR petition on the basis of res judicata, stating:

> [W]e find that the trial court erred in granting summary judgment in the state's favor without first holding a hearing on the PCR petition. The bias or prejudice of even one juror may cause the violation of one's right to a fair trial. [Citations omitted.] Appellant's evidence demonstrates the potential bias of a juror in a case that resulted in a more than 20-year prison term. * * * Therefore, if true, this outside evidence is more than marginally relevant to support appellant's claim that he did not receive a fair trial. Accordingly, it was error for the trial court to summarily dismiss appellant's petition. As such, further exploration of this issue was warranted and a hearing on appellant's petition should be held.

*State v. Blankenburg*, 12th Dist. Butler No. CA2012-04-088, 2012-Ohio-6175, ¶ 14 (*Blankenburg II*).

{¶ 8} This court also rejected the state's argument that the trial court's decision denying appellant's PCR petition should be upheld on the ground that the trial court properly denied the petition on its merits since the affidavits attached to it contained inadmissible

hearsay and thus lacked credibility. *Id.* at ¶ 15-18. This court determined that the trial court did not find that the affiants were not credible but merely that the affidavits were comprised of inadmissible hearsay, and that "[c]onsideration of only one factor, without explanation, is not a sufficient basis for denying a PCR petition." *Id.* at ¶ 18.

{¶ 9} This court also rejected the state's argument that the trial court's decision denying appellant's PCR petition should be upheld on the ground that the trial court properly applied the aliunde rule in Evid.R. 606(B) to bar use of the affidavits attached to the PCR petition. This court determined that while the trial court alluded to the aliunde rule by generally citing Evid.R. 606(B), the trial court's decision "focused primarily on the application of res judicata." *Id.* at ¶ 22. This court further noted that "appellant did not raise the aliunde rule on appeal and, therefore, the issue is not before this court. Consequently, we decline to address the application of the aliunde rule to this case." *Id.* As a result, we reversed the trial court's decision denying appellant's PCR petition and remanded the matter to the trial court for further proceedings consistent with our opinion. *Id.*

{¶ 10} On remand, the state resubmitted its motion for summary judgment, and appellant filed a supplemental memorandum contra to the state's motion. In October 2013, the trial court again granted summary judgment to the state and denied appellant's PCR petition without holding an evidentiary hearing, finding once more that appellant had "failed to meet his burden to show that the evidence is more than marginally significant and that it advances his claim beyond a mere hypotheses that the result would be different if this evidence had been submitted at trial."

{¶ 11} Appellant now appeals, and assigns the following as error:

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT VIOLATED R.C. 2505.39 AND THE LAW-OF-THE-CASE WHEN IT REFUSED TO CONDUCT AN EVIDENTIARY HEARING ON THE ISSUE OF

JUROR BIAS.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE STATE.

{¶ 16} Assignment of Error No. 3:

{¶ 17} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT INVOKED THE ALIUNDE RULE TO PREVENT CONSIDERATION OF JUROR BIAS.

{¶ 18} In his first assignment of error, appellant argues the trial court erred by failing to follow this court's mandate in *Blankenburg II*, which, appellant contends, required the trial court "to conduct an evidentiary hearing and to consider the *evidentiary rules* for aliunde and hearsay in the context of that hearing." (Emphasis *sic.*)

{¶ 19} In *Blankenburg II*, this court stated that "the trial court erred in granting summary judgment in the state's favor without first holding a hearing on the PCR petition." *Id*. at ¶ 14. However, we concluded that same paragraph by stating that "[a]ccordingly, it was error for the trial court to summarily dismiss appellant's petition. As such, further exploration of this issue was warranted and a hearing on appellant's petition *should* be held." (Emphasis added.) *Id*. Because this court stated that a hearing on appellant's PCR petition "should" be held rather than "shall" be held, this court's earlier statement in the same paragraph that "the trial court erred in granting summary judgment in the state's favor without first holding a hearing on the PCR petition[,]" cannot be deemed to have been a mandate requiring the trial court to hold an evidentiary hearing on appellant's PCR petition.

{¶ 20} Additionally, in denying the state's application for clarification of our decision in *Blankenburg II*, this court stated, "[o]n remand the trial court was instructed to address appellant's petition for postconviction relief, discussing all arguments raised by the parties, including the hearsay and aliunde/Evid.R. 606(B) issues. *The nature and type of further*

*proceedings is left to the sound discretion of the trial court.*" (Emphasis added.) *State v. Blankenburg*, 12th Dist. Butler Case No. CA2012-04-088 (Mar. 19, 2013) (entry denying application for clarification). This statement provides additional proof that our opinion in *Blankenburg II* did not mandate that the trial court hold an evidentiary hearing on appellant's PCR petition on remand.

{¶ 21} Therefore, appellant's first assignment of error is overruled.

{¶ 22} In his second assignment of error, appellant argues the trial court erred by granting summary judgment to the state on his PCR petition, since the affidavits he presented in opposition to the state's motion for summary judgment established the existence of a genuine issue of material fact that should have precluded summary judgment. He asserts that the trial court erred by not accepting as true the allegations in the affidavits he presented in opposition to the states' motion for summary judgment when it ruled on that motion.

{¶ 23} R.C. 2953.21 provides three methods for adjudicating a PCR petition: (1) "summary dismissal" under R.C. 2953.21(C) and *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus; (2) "summary judgment" under R.C. 2953.21(D); and (3) an "evidentiary hearing" under R.C. 2953.21(E). *State v. Francis*, 12th Dist. Butler No. CA2013-05-078, 2014-Ohio-443, ¶11-13.

{¶ 24} Here, the trial court granted summary judgment to the state under R.C. 2953.21(D). However, in ruling on a summary judgment motion in the context of a PCR petition, a trial court is obligated to use the standards set forth in Civ.R. 56(C) and grant summary judgment to the moving party only if there is no genuine issue of material fact remaining to be litigated, and only if reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party who is entitled to have the evidence construed in his or her favor. *Id.* at ¶ 11.

{¶ 25} In this case, the trial court did not view the affidavits in the light most favorable to the appellant, nor did it construe the conflicts in the evidence arising from the affidavits in appellant's favor as it was required to do, in order to grant summary judgment to the state under R.C. 2953.21(D). *Id.* As a result, we will treat the trial court's decision granting summary judgment to the state on appellant's PCR petition as being one that "summarily dismissed" appellant's petition without holding an evidentiary hearing under R.C. 2953.21(C) and *Calhoun*. See *Francis* at ¶ 12.

{¶ 26} In *Calhoun*, the Ohio Supreme Court stated that "in reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition," *id.* at 284, since "[a]n affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false." *Id.* However, the court stated that a trial court "may, in the sound exercise of discretion," judge the credibility of the affidavit testimony "in determining whether to accept the affidavits as true statements of fact." *Id.* The court determined that "[t]o hold otherwise would require a hearing for every postconviction relief petition[,]" and that because R.C. 2953.21 "clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended." *Id.* Therefore, the court held that "[t]he trial court may, *under appropriate circumstances* in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant." (Emphasis added.) *Id.* "That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice." *Id.*

{¶ 27} The court in *Calhoun* also discussed the factors a trial court should consider in determining the credibility of supporting affidavits in PCR proceedings. *Id.* at 284-285. *Calhoun* states that a trial court should consider "all relevant factors" in determining the

- 7 -

credibility, or lack thereof, of supporting affidavits submitted in PCR proceedings, including:

> (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial.

*Id.* at 285, citing *State v. Moore*, 99 Ohio App.3d 748 (1st Dist.1994).

{¶ 28} *Calhoun* also states that "[d]epending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility[,]" and that "[s]uch a decision should be within the discretion of the trial court." *Id.* In addition, *Calhoun* states that a trial court may find affidavit testimony "to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.*

{¶ 29} In determining that appellant's affidavits were not credible under the factors listed in *Calhoun*, the trial court found that during voir dire, T.M. "indicated a willingness to disregard what she had heard about this case in the media, and the intent to rely instead on evidence and law presented in court during the trial." The trial court also found T.M. to be a competent juror that was "honest and forthright." The trial court came to this conclusion after having the "opportunity to observe the demeanor of T.M. and evaluate firsthand the sincerity of her responses to questions about fairness and impartiality." It is a well-established principle that this court should not substitute its own judgment regarding credibility for that of the trial court.

{¶ 30} In reaching this decision, we note that the trial court quoted Crim.R. 24(C)(9), which states, "no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the

court is satisfied, from the examination of the juror or from the evidence, that the juror will render an impartial verdict." In turn, by citing to Crim.R. 24(C)(9), it is readily apparent that the trial court was satisfied that T.M. would serve as an impartial and unbiased juror irrespective of any alleged biases whether or not disclosed to the trial court. Simply stated, based on the trial court's credibility determination, what T.M. may have told her former co-workers prior to her selection as a juror in no way impacts her oath to remain impartial. As a reviewing court, we must accept the trial court's findings as true.

{¶ 31} Just as the Ohio Supreme Court stated in *Calhoun*, the trial court is entrusted, based on the sound exercise of discretion, to judge an affiant's credibility in determining whether to accept an affidavit submitted in support of a PCR petition as true. The Ohio Supreme Court has also determined that an evidentiary hearing is not required for every PCR petition as the statute clearly calls for discretion in determining whether an evidentiary hearing should be held. The trial court has already determined that T.M. was credible and exhibited no actual bias. It should not be required to do so again.

{¶ 32} In light of the foregoing, the trial court did not err in dismissing appellant's PCR petition without first holding an evidentiary hearing. Similarly, the trial court did not abuse its discretion in judging the credibility of the affidavit testimony from T.M.'s former co-workers in determining whether to accept the affidavits submitted in support of appellant's PCR petition as true. This court must not substitute its judgment for that of the trial court. Therefore, appellant's second assignment of error is overruled.

{¶ 33} In his third assignment of error, appellant argues the trial court erred by invoking the aliunde rule in Evid.R. 606(B) to prevent consideration of the affidavits he filed in support of his juror-bias claim. He asserts that Evid.R. 606(B) does not prevent an inquiry into jury bias as a result of the answers given by juror T.M. during voir dire.

{¶ 34} Both appellant and the state contend in their respective briefs that the trial court

ruled that the affidavits were inadmissible under the aliunde rule in Evid.R. 606(B).[1] However, a careful review of the trial court's decision shows that the trial court did *not* determine that the affidavits were inadmissible under the aliunde rule contained in Evid.R. 606(B), and contrary to what appellant suggests, there is nothing in the trial court's decision to show that the trial court's consideration of the affidavits was "attenuated and discounted due to the aliunde rule." *See* fn. 2.

{¶ 35} In its decision, the trial court noted that "[t]he State argues that the affidavits are improper under Evid.R. 606(B) and the 'aliunde' rule." The trial court quoted Evid.R. 606(B) in its decision and discussed the requirements, purposes, and basic principles of that evidence rule. The trial court then stated:

> In this matter, the affidavits are concerning statements allegedly made by a juror prior to the trial even beginning. [Appellant] basis [*sic*] his post conviction relief requests on juror, T.M.'s, personal bias not on allegations of juror misconduct. Further, [appellant] has not provided or presented any evidence on how juror, T.M.'s, personal bias had any influence on the deliberations.

The trial court then turned to discussing whether the affidavits presented by appellant in support of his PCR petition were credible and entitled to deference under *Calhoun*. The trial court determined that the affidavits were not credible, and therefore, that the state was entitled to summary judgment on appellant's PCR petition—a determination that this court has upheld for the reasons set forth in our response to appellant's second assignment of

---

1. Appellant acknowledges at one point in his brief that "it is not entirely clear whether the trial court in this case relied on the aliunde rule and [Evid.R.] 606(B) to prevent consideration of the two affidavits[,]" since the trial court stated in its decision "that it had 'carefully reviewed the evidence, the issues raised by the affidavits, and [appellant's] arguments with regard to this evidence.'" However, appellant argues that "even though the [trial] court purported to consider the merits of the affidavits, it appears that any such reliance on those affidavits had to have been attenuated and discounted due to the aliunde rule." The state, on the other hand, has maintained in its response brief and during oral argument that the trial court determined that appellant's affidavits were inadmissible under the aliunde rule in Evid.R. 606(B). However, the state has failed to cite any language in the trial court's decision in which the trial court, either expressly or implicitly, determined that the affidavits were inadmissible under Evid.R. 606(B).

error. However, contrary to what both appellant and the state contend, the trial court did *not* determine, either expressly or implicitly, that it was barred under the aliunde rule in Evid.R. 606(B) from considering the affidavits presented by appellant in support of his PCR petition. Instead, the trial court implicitly found that the aliunde rule in Evid.R. 606(B) was inapposite to this case.

{¶ 36} In light of the foregoing, appellant's third assignment of error is overruled.

{¶ 37} Judgment affirmed.


HENDRICKSON, J., concurs.


RINGLAND, P.J., dissents.


**RINGLAND, P.J., dissenting.**

{¶ 38} I concur with the majority in regards to appellant's first assignment of error. In my personal opinion, we unfortunately did not make it clear enough in our instructions on remand in *Blankenburg II* that the trial court was *required* to conduct a hearing to resolve the conflict between the juror and the affiants, and took it for granted that the trial court would conduct such a hearing. I also concur with the majority in regards to appellant's third assignment of error. However, I respectfully dissent from the majority's ruling on appellant's second assignment of error, because I believe the trial court abused its discretion under *Calhoun* by not giving "due deference" to the affidavits filed by appellant in support of his PCR petition.

{¶ 39} Crim.R. 24(C)(9) provides that "no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from the evidence, that the juror will render an impartial verdict." The majority is correct that the

trial court had the best opportunity to observe T.M.'s demeanor and to evaluate, firsthand, the sincerity of her response to questions about fairness and impartiality; that the trial court found that during voir dire, T.M. indicated a willingness to disregard what she had heard about this case in the media and to rely, instead, on the evidence and law presented in court during the trial; and that the trial court found T.M. to be a competent juror who is "honest and forthright."

{¶ 40} Nevertheless, by refusing to hold an evidentiary hearing, the trial court did not have the opportunity to observe T.M.'s co-workers' demeanor and evaluate, firsthand, the sincerity of their testimony regarding what T.M. had told them. Nor did the trial court have the opportunity to observe T.M.'s demeanor or evaluate, firsthand, the sincerity of her response when confronted with her co-workers' testimony that she had told one of them that she was determined to be on appellant's jury and even wanted to be the foreman of that jury so that she could deliver a guilty verdict to appellant. Additionally, there is no evidence in the record that T.M.'s co-workers had any motive to lie about what T.M. told them regarding her desire to be the foreman on appellant's jury so she could deliver a guilty verdict to him. The trial court could not simply accept T.M.'s responses during voir dire as true without considering the validity of her co-workers' affidavit testimony. An evidentiary hearing is needed to determine whether either T.M. or her co-workers were telling the truth or lying about this matter. The statements that T.M. allegedly made to her co-workers, if true, coupled with T.M.'s responses during voir dire, if false, amount to an outright fraud on the court. When a trial court learns of such allegations, it is obligated to investigate them and to act accordingly if it finds them to be true.

{¶ 41} The trial court also found that the affidavits presented by appellant were not credible because they contain hearsay. However, while the affidavit testimony of Pharmacist T.B. arguably contains hearsay, the affidavit testimony of pharmacy technician D.M. is admissible under the "state of mind" hearsay exception in Evid.R. 803(3).

{¶ 42} Pharmacist T.B. stated in his affidavit that he was told by pharmacy technician D.M. that T.M.'s child or children were patients of appellant. T.B. also stated that T.M. told D.M. that she was determined to become a member of appellant's jury and that "she wanted to see appellant 'fry' (her word) for what he had allegedly done to the various victims." T.B.'s affidavit is not clear as to whether T.B. overheard T.M. telling D.B. that she was determined to be on appellant's jury and that she wanted to see him "fry" for what he allegedly did, *or* whether T.B. learned of T.M.'s alleged remarks through D.B. or some other person.

{¶ 43} Nevertheless, the information in T.B.'s affidavit is very similar to the information contained in D.M.'s affidavit, and D.M.'s affidavit testimony concerns only what T.M. said to D.M., and not to some other person. Specifically, D.M. states in his affidavit that T.M. told him that her son was one of appellant's patients; that while T.M. never said that her son had been abused by appellant, T.M. "expressed a great interest in being a juror in the case"; that T.M. was "obsessed" with the case and "talked about it every day, and frequently stated that she was 'determined to be on that jury'"; and that T.M. "also stated that she wanted to be the foreman of the jury so that she could deliver a guilty verdict to [appellant]."

{¶ 44} Evid.R. 803 states in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * *
>
> **(3) Then existing, mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

{¶ 45} As noted in Weissenberger's Ohio Evidence Treatise (2013 Ed.), Section 803.33, at 92-94 (2013 Ed.):

Rule 803(3) not only admits a declarant's statement where his state of mind is relevant; it also operates to admit statements concerning mental or emotional conditions where such mental states are probative of subsequent conduct. [Footnote omitted.] To put it another way, as one Ohio court has stated: "the testimony must point forward in time rather than to the past." [Footnote omitted.]

Accordingly, statements of plan or intent are admissible to show that the planned or intended act was undertaken. [Footnote omitted.] For example, the declarant's statement, "I plan to go to work tomorrow" is admissible as relevant evidence of the proposition that the declarant went to work on the day subsequent to the out-of-court statement. Likewise, statements such as "I plan to murder X," and "I don't intend to fulfill my obligations under the contract," are admissible under Rule 803(3) as probative evidence of the occurrence of the subsequent relevant conduct. In sum, a plan or intent is a mental state comprehended by Rule 803(3). [Footnote omitted.]

* * * [O]ut-of-court statements of a declarant's plan, design, or intention are admissible to prove that the plan, design, or intention was executed by the declarant. Such statements are in regard to then existing mental states, and as such, they do not suffer from possible defects in memory. Moreover, as relating to purely internal conditions, statements of intent, plan, or design are free of risks of defects in perception. Finally, while not conclusive proof of subsequent actions, statements of intent, plan, or design unquestionably alter the probabilities of subsequent conduct and are, consequently, relevant under Rule 401 to whether the subsequent conduct occurred.

{¶ 46} D.M.'s affidavit testimony regarding what T.M. told him was admissible under the "state of mind" hearsay exception in Evid.R. 803(3), since T.M.'s statements that she wanted to be on appellant's jury and wanted to be the foreman of that jury so that she could deliver a guilty verdict to him are "probative evidence" of her "subsequent conduct," and therefore are admissible to show that T.M's "planned or intended act was undertaken" and "executed." *Id.* at 93. While T.B.'s affidavit testimony may have been hearsay, T.B.'s affidavit testimony is very similar to D.M.'s, and thus T.B.'s affidavit testimony is merely

- 14 -

cumulative to D.M.'s.[2]  Therefore, the trial court abused its discretion by finding that appellant's affidavit testimony constituted inadmissible hearsay and by using that finding as part of its justification for not holding an evidentiary hearing on appellant's PCR petition.

{¶ 47}  Additionally, the trial court, after noting that D.M. had testified in his affidavit that T.M. was determined to be on appellant's jury and wanted to be the jury's foreman so that she could deliver a guilty verdict to appellant, found that appellant "has not cited to any evidence of juror tampering or any evidence as to how juror, T.M. could have manipulated the juror pool to make sure 'she got on that jury.'"  However, while it is clear that T.M. had no capability to make sure that she got on appellant's jury, there is no question that T.M. did, in fact, become a member of the jury that convicted appellant.  Therefore she became obligated to reveal any biases that she may have had against appellant, particularly, where T.M. reportedly became "obsessed" with appellant's case, expressed to one of her co-workers her strong desire to be on appellant's jury and to even become the foreman of that jury so that she could deliver a guilty verdict to him.

{¶ 48}  The trial court also found that at one point during voir dire, T.M. "even requested to be excused from the jury."  However, this finding is inaccurate.  The transcript of the voir dire proceedings shows that during the voir dire proceedings, T.M. informed the trial court that she remembered something that might preclude her from serving on the jury, namely, that she and her husband were going to be receiving a child to adopt either that week or the next.  However, after being questioned by the trial court about whether she would be able to make arrangements with her husband to care for any child that they might soon receive, T.M. indicated to the trial court that she could handle the matter, stating, "Well, I

---

2.  It is true that T.B.'s affidavit testimony included an averment that T.M. told D.M. that she wanted to see appellant "fry" for what he allegedly had done to the various victims; however, D.M.'s affidavit also stated that T.M. "was biased towards [appellant] and sought to be on the jury so she could convict him."

know a man's life would be on [*sic*] the balance so I would be able to focus on the trial." Additionally, while T.M. disclosed this potential issue during voir dire, which she soon agreed would not prevent her from serving on the jury, she failed to disclose two facts set forth in appellant's affidavits, namely, that T.M. filled prescriptions for appellant in her role as a pharmacist at Kroger, and more importantly, that T.M.'s son had been one of appellant's patients.

{¶ 49} It is apparent from its decision denying appellant's PCR petition that the trial court failed to give the affidavits presented by appellant the proper amount of deference to which they were entitled, as required under *Calhoun*, 86 Ohio St. at 284. If the testimony in these affidavits is true, it would "rise to the level of demonstrating a constitutional violation[.]" *Id.* As this court stated in *Blankenburg II*, 2012-Ohio-6175 at ¶ 14, "[t]he bias or prejudice of even one juror may cause the violation of one's right to a fair trial."

{¶ 50} This is not simply a case where a prospective juror failed to disclose information during voir dire, and we are not simply finding that T.M. may have failed to disclose information she should have revealed during voir dire. Instead, the affidavit testimony, if true, shows that T.M. very much wanted to be a juror in appellant's case, and even wanted to be the foreman of that jury so that she could deliver a guilty verdict to him. The remarks that Juror T.M. made to her co-worker D.M. reveal troubling evidence of a strong bias against appellant. If the information in D.M.'s affidavit is true, T.M. was obligated to reveal this information to the trial court, which she failed to do, despite having several opportunities to reveal it.

{¶ 51} I am mindful of the possibility that prior to her selection on the jury, T.M. was merely "blowing off steam," and that T.M. realized the solemnity of her civic responsibility once she was selected to serve as a juror. However, I also realize the possibility that T.M. was determined, if selected as one of the jurors in appellant's case, to do whatever was

necessary and whatever she could to convict appellant. The truth of what actually happened can be sorted out only through a complete and thorough weighing of the evidence, including an informed determination of the affiants' credibility vis-à-vis T.M.'s credibility. These matters are for the trial court to determine, and the trial court can only make these determinations after holding an evidentiary hearing.

{¶ 52} The affidavits presented by appellant provided sufficient evidence to require the trial court to hold an evidentiary hearing on appellant's claims that T.M. was biased against him and that she provided dishonest and incomplete answers during voir dire. The trial court clearly abused its discretion by refusing to hold such a hearing. Therefore, I would sustain appellant's second assignment of error and remand this case with instructions that the trial court hold an evidentiary hearing on the claims raised by appellant in his PCR petition. Since the majority refuses to do so, I respectfully dissent from their decision.